# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONNECTICUT ADDICTION, MEDICINE, LLC<br>    Plaintiff, | : : : : : | No. 3:17-CV-00333 (VLB) |
| v. | : : | January 11, 2018 |
| eLAB SOLUTIONS CORPORATION d/b/a eLAB CONSULTING SERVICES, INC.,<br>    Defendant. | : : : : : | |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS OR TRANSFER VENUE [DKT. 13]

This action involves a contract dispute between Connecticut Addiction Medicine, LLC ("Plaintiff" or the "Practice") and Defendant eLab Solutions Corporation doing business as eLab Consulting Services, Inc. ("Defendant" or "eLab"). Plaintiff raises claims of breach of contract, negligence, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110 *et seq.*, which are all related to the Defendants' actions in executing and performing the contract. Defendant now seeks to dismiss the case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, transfer the case to the Northern District of Georgia, which is where Fulton County, Georgia is located. For the foregoing reasons, dismissal is DENIED but the Court GRANTS transfer to the Northern District of Georgia.

## Background

The Practice performs medical services that include drug testing. [Dkt. 1-1 (Compl.) ¶ 1]. In 2013, the Practice entered into the first of several Program Agreements with eLab arranging for eLab to provide staff, products, and training to facilitate testing. *Id.* ¶ 3. The Program Agreement included a Committed Products Addendum, which outlined types of kits the Practice would purchase and the costs associated per kit and per test and upon which the Practice relied. *Id.* ¶ 4. The Complaint alleges eLab breached the Program Agreement by failing to (a) properly represent costs, (b) train employees, (c) monitor the products, and (d) perform quality control. *Id.* ¶ 8.

The parties entered into several successive one-year program agreements. *See* [Dkt. 13-4 (Mot. Dismiss Ex. 4, Program Agreement 8/2013) at 2; Dkt. 13-6 (Mot. Dismiss Ex. 6, Program Agreement 2/2014) at § 15(b); Dkt. 13-7 (Mot. Dismiss Ex. 7, Program Agreement 7/2014) at § 15(b)]. All of the program agreements in evidence contain a forum selection clause, which reads:

> The rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the <u>State of eLab's manufacturing location</u>, without reference to its choice of law provisions. Each party hereby irrevocably consents to the exclusive jurisdiction of the <u>state and federal courts located in the county and state of eLab's manufacturing location</u>, in any action arising out of or relating to this Agreement <u>and waives any other venue</u> to which it may be entitled by domicile or otherwise.

*Id.* at § 15(b). None of the submitted Program Agreements define "manufacturing location."

Relying on the forum selection clause, Defendant moves for an order dismissing the case for lack of venue or transferring venue to the Northern

District of Georgia where eLab manufacturing operations are located. [Dkt. 13-1 (Mot. Dismiss Mem.) at 4-5]. Plaintiff objects to dismissal and transfer, arguing principally that the forum selection clause is vague, ambiguous, undefined, not clearly communicated, and that enforcement would be unreasonable and unjust. [Dkt. 26 (Obj'n to Mot. Dismiss) at 1].

## Discussion

As an initial matter, transfer rather than dismissal is appropriate here. The prescribed manner by which to enforce a valid forum selection clause specifying a different federal district is to transfer under 28 U.S.C. § 1404(a), not dismissal pursuant to Fed. R. Civ. P. 12(b)(3). *See Atl. Marine Constr. Co., Inc. v. United States Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568, 575, 579-80 (2013). Where the forum selection clause points to a state or foreign jurisdiction, a court can dismiss a case under the *forum non conveniens* doctrine. *Id.* at 580.[1] In view of the diversity of the parties and the resulting availability of federal court jurisdiction and the fact that neither party has suggested this case should be litigated in state court, the court will consider whether the case should be transferred rather than dismissed. *See* 28 U.S.C. § 1332.

A court typically looks at pleadings and affidavits when evaluating a motion to dismiss based on a forum selection clause. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 216-17 (2d Cir. 2014). This Court will also rely on additional

---

[1] The United States Supreme Court has clarified that § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.*

undisputed evidence submitted by the parties. *See New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997) (approving appellants' introduction of "additional evidence to support their claim of unreasonableness before the district court"); *Martinez*, 740 F.3d at 216-17 (requiring a court to conduct an evidentiary hearing to resolve disputed factual questions).

I. <u>Enforceability of the Forum Selection Clause</u>

The critical question in this case is whether the forum selection clause is enforceable as the answer impacts the standard used to determine the appropriateness of transfer under 28 U.S.C. § 1404(a). Where a forum selection clause is unenforceable or otherwise not applicable, a court is to engage in the standard transfer analysis and consider the parties' private interests and other public interest factors. *See Atl. Marine*, 134 S. Ct. at 581 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). A valid forum selection clause alters this analysis by precluding the court from giving weight to the plaintiff's choice of forum and from considering the parties' private interests; a court must instead consider only arguments about public-interest factors. *Id.* at 583. A court is also bound by the choice of law provision "[i]n all but the most unusual circumstances." *Id.*; *see Charter Oak Oil Co., Inc. v. Applied Underwriters, Inc.*, No. 17-cv-00689, slip op. at 1 (D. Conn. Sept. 12, 2017) (citing *Atl. Marine*, 134 S. Ct. at 581-82).

A forum selection clause is enforceable if it satisfies the Second Circuit's four-part test. A court must ask:

(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or

> permissive, i.e., . . . whether the parties are required to bring any [ ] dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez*, 740 F.3d at 217 (internal quotation marks and citations omitted); *see Charter Oak*, slip op. at 5 (applying this four factor test "[t]o determine whether a forum selection clause is enforceable"); *United States ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am.*, No. 3:14-cv-1017 (VAB), 2015 WL 4393576, at *6 (D. Conn. July 16, 2015) (same); *Compuweigh Corp. v. Honeywell Int'l, Inc.*, No. 3:16-cv-01108 (VAB), slip op. at 3 (D. Conn. Dec. 9, 2016) (same).

In *Martinez*, 740 F.3d at 217 (2d Cir. 2014), the Second Circuit distinguished *interpretation* of a forum selection clause from *enforceability* of a forum selection clause. The Second Circuit found that the "overriding framework" of the four-factor test is guided by federal law but clarified that "[i]n answering the *interpretive* questions posed by parts two and three of the four-part framework, we normally apply the body of law selected in an otherwise valid choice-of-law clause." *Id.* at 217-18. This distinction is necessary because "[i]t would undermine the predictability fostered by forum selection clauses, however, if federal law—rather than the law specified in a choice-of-law clause—were to govern the *interpretation* as well as the enforceability," federal law "could frustrate the contracting parties' expectations by giving a forum selection clause

5

a broader or narrower scope in a federal court than it was intended to have." *Id.* at 220.

In addition, the Second Circuit discussed the value of retaining a distinction between procedure and substance. The Second Circuit reasoned that the application of federal law at steps two and three could create a federal common law undermining the balance between state and federal systems established in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Id.* at 221. This principle is a reminder that "[c]ontract law—including the rules governing contract interpretation—is quintessentially substantive for *Erie* purposes, and therefore primarily the realm of the states." *Id.* "In construing a forum selection clause, a court may confront a wide range of contract law issues, from *the treatment of ambiguous phrases*, to the admissibility of parol evidence, to successorship and the rights of third-party beneficiaries." *Id.* (emphasis added) (internal quotation marks and citations omitted). Such a discussion is a helpful reminder to limit the analysis of each factor to the specific question at hand—the first step of the four-part analysis, which deals with *enforceability* and applies federal law, is not the stage to engage in *interpretation* of the contract language.

Plaintiff challenges the first and fourth factor of the four-part test. The Court will address these two factors in turn.

### A. *The Forum Selection Clause was "Reasonably Communicated"*

A forum selection clause is "reasonably communicated" when the "physical characteristics" evince the important terms and the circumstances present in effectuating the contract enabled the parties to "become meaningfully

6

informed of the contractual terms at stake." *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523 (2d Cir. 2001) (adopting the rule for a passenger's ticket on a cruise); *see United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 225 (D. Conn. 2003) (applying the two-part test in a contract dispute over an employment agreement); *FSB USA, Inc. v. Am. Prods. Prod. Co. of Pinellas Cnty., Inc.*, No. 3–08–cv–1758 (JCH), 2009 WL 2762744, at *4 (D. Conn. Aug. 24, 2009) (utilizing the two-part test for a purchase and sale contract dispute between two companies); *see also Compuweigh Corp.*, slip op. at 3 (acknowledging a party need not have read the provision so long as the physical characteristics reasonably communicate the clause and the circumstances enable the party to be meaningfully informed of the terms).

The physical characteristics of the forum selection clause are unchallenged and do not undermine the clarity with which these terms were effectively communicated. "Courts have . . . considered the inclusion of a forum selection clause within the main text of a contractual agreement to support a finding that the forum selection clause was reasonably communicated." *Compuweigh Corp.*, slip op. at *3 (collecting cases); *c.f. FSB USA, Inc.*, 2009 WL 2762744, at *4 (finding forum selection clause was not reasonably communicated where "FSB was required to affirmatively ask API for a separate copy of the Terms in order to become aware of the forum selection clause," and API's failure to do so meant it did not adequately "ensure[ ] that the terms were reasonably communicated"). In this case, the physical characteristics of the Program Agreement make clear the important terms of the forum selection clause as it is

7

set forth in the Miscellaneous section in plain text matching the body of other contractual provisions.  *See* [Dkt. 13-4 at § 15(b)].

Implied in enforcing any contract is the principle that "a person who signs a contract is presumed to know its terms and consents to be bound."  *Horvath v. Banco Comercial Portugues, S.A.*, No. 10 Civ. 4697 (GBD), 2011 WL 666410 at *4 (S.D.N.Y. Feb. 15, 2011), *aff'd* 461 F. App'x 61 (2d Cir. 2012); *see Frankford Crossing Shopping Ctr. Dallas, Tx. Ltd. P'ship v. Pho Partners, LLC*, 942 F. Supp. 2d 366, (W.D.N.Y. 2013) (quoting *Horvath* and enforcing a forum selection clause on jurisdiction).  As long as a party does "all it reasonably could" to warn a party of an important matter in a contract affecting legal rights, a forum selection clause can be considered "reasonably communicated."  *FSB USA, Inc.*, 2009 WL 2762744, at *4 (quoting *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir. 1968)).

The Court finds that the forum selection clause enabled the parties to "become meaningfully informed of the contractual terms at stake" in light of the fact that the parties both appear to be sophisticated businesses capable of informing themselves about the important terms of the contract.  *See Ward*, 273 F.3d at 523.  The clause was typed in the body of the contract in the same font as the other terms.  Indeed, Plaintiff does not challenge the circumstances surrounding the signing of the contract.  Nor does Plaintiff posit an interpretation of the terms different than that advanced by Defendant; but rather asserts that it did not understand the terms.  It is paramount that sophisticated parties inquire about purportedly ambiguous contractual terms so as to ensure they can achieve

a proper meeting of the minds. If they were not required to do so, a party consenting to terms would be incentivized to ignore any potentially ambiguous language under the premise that it will not be enforceable in court, thereby creating a risk of inequity in the bargain. It is a general principle that a party's lack of understanding about an ambiguous term does not render the contract unenforceable when the party "fail[ed] to clarify or ascertain the meaning once the ambiguity becomes apparent." 2 Williston on Contracts § 6:59 (4th ed. 2017); *see* Restatement (Second) of Contracts § 20, cmt. d (Am. Law Inst. 1981) ("[A] party may be bound by a merely negligent manifestation of assent, if the other party is not negligent."); Restatement (Second) of Contracts § 153, cmt. a (Am. Law Inst. 1981) ("Courts have traditionally been reluctant to allow a party to avoid a contract on the ground of mistake, even as to a basic assumption, if the mistake was not shared by the other party."). Here, Plaintiff had the opportunity to inquire as to what "manufacturing location" meant and the language was clearly stated in the body of the contract. That Plaintiff continued to sign additional Program Agreements containing the exact same language is indicative of its intent to be bound by the clearly apparent terms. *See* [Dkt. 13-13-6 at § 15(b); Dkt. 13-7 at § 15(b)].

Mr. Smith has submitted an affidavit indicating the "manufacturing location" exists in Fulton County, Georgia. *See* [Dkt. 13-3 (Mot. Dismiss Ex. 3, Smith Aff.) at ¶ 8]. There is no evidence indicating Plaintiff did not believe the manufacturing location existed anywhere outside of the facility in Georgia or that the manner in which the contract was formed otherwise prevented Plaintiff from

"becom[ing] meaningfully informed of the contractual terms at stake." *See Ward*, 273 F.3d at 523. Here, Defendant did "all it reasonably could" by including the exact same language in the body of a contract repeatedly renewed. *See FSB USA, Inc.*, 2009 WL 2762744, at *4.

Plaintiff cites *Randolph Eng'g Co. v. Fredenhagen Kommandit-Gesellschaft*, 476 F. Supp. 1355, 1359 (W.D. Pa. 1979), a case wherein the district court ruled it would be unreasonable to enforce a forum selection clause that did not explicitly identify a jurisdiction. The forum selection clause provided,

> This order and any contract arising from this order, as well as all transactions contemplated hereby, shall be governed by and construed according to the laws of the State from which this order is issued and the courts of the State and the federal courts sitting in the State shall have jurisdiction in all actions arising with respect thereto. Any trade or commercial terms used in this order shall be interpreted in the light of the INCOTERMS 1953 of the International Chamber of Commerce.

*Id.* at 1357 n.1. In finding the plaintiff's forum of Michigan would unreasonable, the district court noted that Michigan had only tenuous connection to the litigation and that personal jurisdiction did not exist in Michigan. *See id.* at 1360 n.2. In contrast, this case involves a forum selection clause that identifies the company's "manufacturing location" as the proper forum for venue and jurisdiction. Defendant's principal place of business is located in Georgia, it engaged in a substantial portion of its business activities in Georgia, and there is no reason to believe the manufacturing location would not have existed at eLab's principal place of business or that Plaintiff could not obtain jurisdiction over eLab in Georgia. Moreover, *Randolph* does not address the four-factor test. Thus, the

comparison is not as persuasive as Plaintiff suggests and the Court will adhere to the analysis presented by courts within this circuit.

The Court similarly does not find Plaintiff's reliance on *City of New York v. Pullman Inc.*, 477 F. Supp. 438, 443 (1979) to be persuasive. In this case, the forum selection clause stated that "only the New York courts shall have jurisdiction over this contract and any controversies arising out of this contract" and further restricted the litigation of "any controversies or problems arising out of this contract to the New York courts and the New York courts only." *Id.* at 440. This case was removed to New York federal court on the basis of diversity and the parties disputed jurisdiction rather than venue, arguing whether the forum selection clause required the case to be heard in state court. The district court did not remand the case to state court because the forum selection clause did not limit the forum to state or federal court. The Court does not find this case persuasive as the facts are distinguishable. Because the facts are inherently different and *Pullman* does not address the four-factor test, the Court does not rely on its reasoning in reaching its conclusion for the first factor.

The Court is, however, persuaded by Defendant's discussion of *Horvath v. Banco Comercial Portugues, S.A*. In this case, the plaintiff entered into a contract in 2002 with a forum selection clause restricting jurisdiction to courts in Lisbon or Oporto. *Horvath*, 2011 WL 666410, at *1. Not only did the plaintiff sign the contract even though the provisions were in Portuguese, but he also re-signed the contract in 2005 and received and signed an English translation in 2006. *Id.* The district court observed "the terms were not hidden" despite the language

difference, because "[t]he forum selection clause was set off on its own and in normal sized font."  *Id.* at *4.  The court stated that "[f]ailure to read a contract, even if such failure is brought about by an inability to understand the language, is not an excuse or defense to enforcement of the contract terms."  *Id.* (collecting cases).  The court reasoned,

> Plaintiff is a sophisticated business man who has a residence in Portugal and has a wife who speaks Portuguese fluently.  He signed multiple agreements containing the forum selection clause, including one in English.  He cannot now circumvent these agreements by saying he did not understand the language of the contract.  It was his responsibility to request a translation or to request clarification of the terms he was signing.

*Id.* at *5.  The situation is largely the same here.  Like the plaintiff in *Horvath*, it appears that Plaintiff in this case may have failed to read or inquire about language present in multiple contractual renewals spanning multiple years.  If Plaintiff was not sure what the language meant, the response should have been to inquire about the terms.

The Court has considered the parties' arguments on Plaintiff's claim that the forum selection language is ambiguous because Plaintiff was unaware of Defendant's "manufacturing location." The Court abstains from interpreting the provision, first because Plaintiff identified only the first and fourth factors of the Second Circuit enforceability test and thus it is inappropriate for the to consider the second factor.  *See Martinez*, 740 F.3d at 217.   Second, Plaintiff does not allege that it misunderstood the meaning of the language because it was unclear. Instead it alleges it did not know and did not ask where Defendant manufactured its products.

### B. *Plaintiff Has Not Demonstrated the Forum Selection Clause's Enforcement Would Be Unreasonable or Unjust*

At the fourth step, an otherwise valid forum selection clause will be enforced unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff will effectively be deprived of his day in court." *Martinez*, 740 F.3d at 227 (internal quotation marks and citations omitted). In making a showing under any of these circumstances, Plaintiff bears a "heavy burden." *Id.* at 219.

To the extent Plaintiff challenges the fourth factor of the test, Plaintiff states in conclusory fashion that it would be unreasonable or unjust to litigate in Georgia as the forum selection clause fails to identify a geographic location, the transactions took place in Connecticut, its witnesses are located in Connecticut, and its Connecticut Unfair Trade Practices Act ("CUTPA") claim would be more properly heard in Connecticut. [Dkt. 26 at 15]. By entering into the Program Agreements containing forum selection and choice of law clauses, Plaintiff has agreed that Georgia law applies and essentially contracted around these arguments. [Dkt. 13-4 at § 15(b)]. Most importantly, Plaintiff has failed to provide the Court with any facts, legal authority, or analysis supporting these claims and thus does not overcome the "heavy burden" required to rebut the presumption of the forum selection clause's enforceability. *See Martinez*, 740 F.3d at 217. For these reasons, the Court finds that the forum selection clause is enforceable.

## II. Transferring Venue

Section 1404(a) of Title 28 of the United States Code provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Because the forum selection clause is enforceable, the Court may not consider the plaintiff's choice of forum or arguments concerning the parties' private interests. *Atl. Marine*, 134 S. Ct. at 581-82; *Charter Oak*, slip op. at 1; *Compuweigh Corp.*, slip op. at 6. A court may, however, consider public-interest factors such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 134 S. Ct. at 582 n.6. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual circumstances." *Id.* at 582. The forum selection clause's choice of law provision is to control absent unusual circumstances. *Id.* at 583; *Charter Oak*, slip op. at 7.

The Court cannot consider much of Plaintiff's argument against transfer as Plaintiff largely refers to its private interests. Plaintiff does, however, posit that Connecticut law applies. As stated above, the Court disagrees. The forum selection clause provides for "the laws of the State of eLab's manufacturing location" to apply. [Dkt. 13-4 at § 15(b)]. Thus, Georgia's laws will apply, not those of Connecticut. In failing to provide the Court with any other factors

disfavoring transfer, Plaintiff has not met its burden to show that transfer is unwarranted. *See Atl. Marine*, 134 S. Ct. at 583.

## Conclusion

For the aforementioned reasons, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss or Transfer Venue. The Clerk is directed to transfer this case to the Northern District of Georgia and close this case.

IT IS SO ORDERED.

       /s/
Vanessa L. Bryant
United States District Judge

Order dated in Hartford, Connecticut on January 11, 2018.